IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: APPLICATION FOR AN ORDER AUTHORIZING THE INSTALLATION AND USE OF A PEN REGISTER DEVICE, TRAP AND TRACE DEVICE, DIALED NUMBER INTERCEPTOR, NUMBER SEARCH DEVICE, AND CALLER IDENTIFICATION SERVICE, AND THE DISCLOSURE OF BILLING, SUBSCRIBER, AND AIR TIME INFORMATION. | NO. S-06-SW-0041<br><br>MEMORANDUM |

_____/

*Introduction and Summary*

      The United States Attorney ("government") has filed an application for an order seeking pen register (identity of phone numbers called from a specific number) and trap and trace information (identity of phone numbers calling a specific number) along with release of subscriber information related to the subject number and persons calling the subject number. None of this is extraordinary. However, in a matter subject to some dispute, the government has also requested that "cell site" information be disclosed when a specific cell phone is utilized. This information will give a fairly specific location of the place where the cell phone is utilized for an incoming or outgoing call. That is, the phone company is expected to identify the specific cell tower(s) "handling" the initiation, reception or maintenance of phone calls associated with the specified cell phone.

Although in denying the disclosure of cell site information some courts have gone beyond the plain meaning of the authorizing statute, and delved into Congressional hearing testimony and/or relied on "intuition" in order to ascertan Congressional intent, a proper adherence to established rules of statutory construction requires the granting of the government's request for cell site information.

The undersigned approved the government's request in all particulars, including the cell site information. This memorandum discusses approval of the request in this particular.

*Discussion*

As an investigative tool, the government often desires to know who the subject of a criminal investigation is calling and who is calling the subject. Congress has authorized phone companies to disclose the electronically stored records of phone numbers and subscriber information associated with phone calls to or from the land line telephone or cell phone – if a court finds from the supplied declaration's "specific and articulable facts" that "there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d).[1] All the various types of electronically stored records to be disclosed are not delimited in the statute and include disclosure of "a record or other information" pertaining to a subscriber or customer of the communication service, § 2703(b). "Other information" could include records of cell site locations if such records are kept by the communication company. Of course, the contents of the communication, which are kept in a communication company's "electronic storage" for 180 days or less themselves, are not discoverable absent a search warrant based on probable cause, § 2703(a), or if the contents have been in storage for more than 180 days – by a search warrant, or other specified procedures

\\\\\

---

[1] All code references are to Title 18 unless otherwise specified.

depending on whether notice to the subscriber is given, § 2703(b).  Section 2703 is part of the Stored Communications Act (SCA).

While the SCA would generally be sufficient to disclose information useful for a criminal investigation, Congress has also authorized "real time" acquisition of phone number and identification of other electronic information.  Section 3121 et seq. (Chapter 206 of Title 18 "Pen Registers and Trap and Trace Devices").  Congress has desired to limit the information obtained pursuant to a pen register or trap and trace to "dialing, routing, addressing, and signaling information utilized in the processing and transmitting of wire and electronic communications," § 3121(c).  There is little doubt that "signaling information" would include cell tower locations which are pertinent to transmission or reception of a cellular telephone call.  See In the Matter of....Cell Site Information, __ F. Supp. 2d __, 2006 WL 243017 (E.D.Wis. 2006) ("E.D. Wis."). See also 47 U.S.C. § 1001(2) (specifically defining "signaling information" to include information that identifies the origin and direction of a phone call).  The government is authorized to obtain this information by court order on a somewhat lesser, but nevertheless substantially similar, basis upon which it can obtain SCA information, i.e., pursuant to § 3122 which requires a certification by the applicant, under oath, that the sought information "likely to be obtained is relevant to an ongoing criminal investigation."  Although the agents involved in an investigation generally review the information obtained after the fact of its acquisition, there is the possibility that information can be transmitted via a pen register or trap and trace device for near contemporaneous review when the needs of the investigation so require.

Were the statutory schemes referenced above the sum total of relevant schemes, there could be no doubt that the government would be entitled to cell site information, both historical and contemporaneous, on court order as opposed to search warrant.  However, one more statutory scheme is pertinent, that of the Communications Assistance to Law Enforcement Act (CALEA), 47 U.S.C. § 1001.  The primary purpose of this act is to ensure that those entities in the business of transmitting wire and electronic communications maintain equipment

3

necessary to give law enforcement the information which is authorized to be disclosed under the foregoing statutes.  However, signaling information indicating the location of persons was not to be made available when *solely* sought pursuant to a pen/trap and trace order authorized under § 3121 et. seq.:

> (2) expeditiously isolating and enabling the government, pursuant to a court order or other lawful authorization, to access call-identifying information that is reasonably available to the carrier--
>
> (A) before, during, or immediately after the transmission of a wire or electronic communication (or at such later time as may be acceptable to the government); and
>
> (B) in a manner that allows it to be associated with the communication to which it pertains, except that, with regard to information acquired *solely pursuant* to the authority for pen registers and trap and trace devices (as defined in section 3127 of Title 18), such call-identifying information shall not include any information that may disclose the physical location of the subscriber (except to the extent that the location may be determined from the telephone number);

47 U.S.C. § 1002(a)(2) (emphasis added).

      In previous cases, the government has claimed that it is entitled to "real time" signaling information, i.e., location of pertinent cell towers associated with a call, because it is not seeking the information *solely* pursuant to the pen/trap and trace provisions of § 3121 et seq. – it also seeks historical, stored electronic information pertinent to cell site location under the authority of the SCA.  Although the government's argument has found some favor, see In re Application...Authorizing the Use of a Pen Register and Trap and Trace, 405 F. Supp. 2d 435 (S.D.N.Y. 2005) (SDNY), on account of the plain meaning of the word "solely," other courts using their "intuition" and going behind the plain meaning of an otherwise unambiguous statutory text in their use of legislative history, see In the Matter of....Cell Site Information, supra (E.D. Wis.); In re U.S. For an Order...., 407 F. Supp. 2d 134 (D.D.C. 2006) ("D.D.C."), have concluded that only a warrant issued on probable cause or perhaps a wiretap application, 18 U.S.C. § 2510 aka "Title III," will do for obtaining cell site location information.

\\\\\

Were the only purpose of this opinion to say "me too" to the SDNY opinion, the undersigned would not issue an opinion; he would simply rely on the better reasoned and more fully developed SDNY opinion which has also been followed in other jurisdictions. See In re Matter of Application of U.S...., __ F. Supp. 2d __, 2006 WL 244270 (W.D. La. 2006). However, a point made in the SDNY opinion bears emphasis because some of the more recent decisions, e.g., E.D. Wis. and D.D.C., stray from the cardinal rule of statutory interpretation – in seeking the intent of Congress, one looks first to the words of the statute; if those words are unambiguous, interpretation stops. Time and again the Supreme Court has so instructed. "The starting point in interpreting a statute is its language, for '[i]f the intent of Congress is clear, that is the end of the matter.'" Good Samaritan Hosp. v. Shalala, 508 U.S. 402, 415, 113 S. Ct. 2151, 2157 (1993). Legislative history cannot be utilized to create an ambiguity in an otherwise unambiguous text.

> There are, we recognize, contrary indications in the statute's legislative history. [footnote omitted] But we do not resort to legislative history to cloud a statutory text that is clear.

Ratzlaf v. United States, 510 U.S. 135, 147-148, 114 S. Ct. 655, 662 (1994). Reference to legislative history at all is inappropriate if the words of the statute are clear in themselves. Department of Housing and Urban Develop. v. Rucker, 535 U.S. 125, 131, 122 S. Ct. 1230, 1234 (2002).[2]

The courts, including E.D.Wis. and D.D.C., which insist that Congress meant to limit tracking information to applications for a search warrant do not apply to the above law. Rather, they take the clear command – you may not obtain tracking information if sought "solely pursuant" to the Pen Register statute, and transform it into – you may only obtain tracking information pursuant to a search warrant or perhaps a wiretap application. These courts base their conclusion on the fact that FBI Director Freeh, in 1994, told Congress that the then current

---

[2] An "absurd result" exception may apply, but this infrequently utilized exception is of no pertinence here.

5

Case 2:06-sw-00041-GGH   Document 4   Filed 03/15/06   Page 6 of 7

administration was not seeking such tracking information at all by virtue of the CALEA. Congress, nevertheless, in that very statute gave authority to government prosecutors to obtain such tracking information with only one stated exception: in a situation where such information was sought solely pursuant to a Pen Register order. And, Congress certainly knew how to limit access to information to only those situations where a search warrant had been approved. See the SCA, 18 U.S.C. § 2703(a). But somehow, the above courts reason, despite the simplicity of the available (but unused) warrant language, Congress used language conveying the intent that there was only one exception to obtaining tracking information, when sought "solely pursuant" to the Pen Register statute, to provide a requirement to obtain tracking information only pursuant to a warrant or perhaps a Title III wiretap approval. The above courts never persuasively relate why Congress would be so obtuse in its language.

In sum, if Congress made a "mistake" in 1994 in permitting access to signaling "tracking" information by means of application pursuant to statutory authority aside from the Pen Register statute, i.e., the SCA, it is up to Congress to clear up its wording, not for the courts to proclaim what Congress surely desired to do if it had only used the proper wording.[3]

Because in the application under consideration the Assistant United States Attorney sought cell site information not "solely pursuant" to the Pen Register statute, but also pursuant to the SCA, cell site information is properly within the scope of information to be received.

One final point should be made concerning the scope of the cell site information to be obtained. This court, like SDNY, believes that a communication to or from the targeted cell phone must be made in order for the police to validly monitor cell site information pursuant

---

[3] Indeed, Congress did not add "signaling information" to the Pen Register statute until 2001 (as a provision in the Patriot Act); perhaps that is why in 1994 Congress indicated that tracking information derived from signaling information could not be obtained solely pursuant to a pen register etc. request. But, whatever the reason, the point here is – Congress disapproved obtaining tracking information sought "solely pursuant" to the Pen Register statute.

1  to a court order.  While it is reasonable to think of roaming signals from a cell phone which is
2  merely operative as signaling information, Congress has indicated that it desires to limit the
3  acquisition of signaling information more narrowly to require a communication.  47 U.S.C. §
4  1001(2).[4]  Section 3121 also limits the government's access abilities to information obtained "in
5  the processing and transmitting of wire or electric *communications*." (Emphasis added).
6  Communication bespeaks the imparting of information by or between persons via electronic
7  means, not the mere, constant contact of one machine with another machine.  See § 2510(12).
8  Where Congress has consistently utilized the term "signaling information" in such a way that it is
9  referring to information generated from communications, the undersigned sees no reason to
10 depart from such consistent usage.  Thus, a valid order permitting the acquisition of signaling
11 information refers only to the information generated by a phone call, i.e., a communication.
12         This memorandum need not be sealed as the memorandum discloses no
13 identifying information.
14 DATED: 3/15/06
                                              /s/ Gregory G. Hollows
15                                             _____
                                              UNITED STATES MAGISTRATE JUDGE
16
   GGH:gh:035
17 06SW41.ord

---

[4] The term "call-identifying information " means dialing or *signaling information* that identifies the origin....of each *communication* generated.... (emphasis added).

7